United States District Court
District of Connecticut
FILED AT HARTFORD
4/26/03
Kevin J. Rowe, Clerk
Deputy Clerk

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MAUREEN EPPS,                          :
DIANE CLAUSSEN and                     :
GERALDINE WRIGHT                       :
    Plaintiffs                     :        C.A. NO. 3:01 CV 2156 (AVC)
                                   :
VS.                                    :
                                   :
GERALD MISTRETTA and                   :
THE BOARD OF EDUCATION FOR             :
THE TOWN OF EAST LYME                  :
    Defendants                     :        NOVEMBER 26, 2003


### PLAINTIFFS' LOCAL RULE 56(a)(2) STATEMENT

I.      Pursuant to Rule 56(a)(2) of the District of Connecticut Local Rules, the plaintiffs

hereby submit a response to the statement of material facts as to which defendants' claim

there is no genuine issue to be tried.

    1.      Admitted.

    2.      Admitted.

    3.      Denied.  This is a statement of opinion which varies depending on who one

          asks.  Many teachers of the school, including plaintiffs, believed that Mistretta

          did not act in the best interest of the students.

    4.      Admitted.

    5.      Admitted.

    6.      Admitted.

    7.      Admitted

    8.      Admitted.  While it is true that Ms. Epps was given a letter of reprimand, it is

          also true that after these accusations were made, she explained that she was

merely following Mistretta's direction. (See Epps Dep. Test., pp. 38-43, attached hereto as Exhibit 6). Thus, there are questions of fact regarding the accusations made against her.

9.     Admitted as to the contents of Exhibit 6.

10.    Admitted. However, it is also true that the business day following her complaint to the union, Mistretta removed her as CIL. (See Epps Affidavit).

11.    These factors were never mentioned when she was removed as CIL. She was only told that Mistretta wanted to take the department in a different direction. These charges were fabricated later. (See Epps Affidavit).

12.    Denied as stated. After she was removed as CIL for lodging a complaint with the union against Mistress, there were accusations made against her regarding a colleague's computer. While these accusations were made, they have nothing to do with the claims made by Ms. Epps in this case. (Epps Affidavit)

13.    Denied. She was accused of using Mr. Wilson's computer. However, she explained that she had done nothing wrong and she never saw any questions. Having held the position of Liaison and CIL for her department for ten years, Ms. Epps certainly did not need to look at questions relating to an application for that position. (See Epps Affidavit).

14.    Admitted.

15.    Admitted.

16.    Denied as stated. The Memorandum speaks for itself. She was again accused of doing something she did not do. After she filed the grievance, her attempts to exonerate herself were ignored. (See Epps Affidavit).

17.    Denied.  Ms. Epps' statement is taken out of context.

18.    Denied.

19.    Admitted

20.    Admitted.

21.    Denied.  The plaintiffs have no way of knowing whether Reynolds sought to

       meet with Mistretta.  Exhibit 16 does not address this issue.

22.    Denied.  Exhibit 16 does not address this issue.

23.    Admitted.

24.    Admitted.

25.    Admitted.

26.    Admitted.

27.    Admitted.

28.    Admitted.  Ms. Wright did not mention that the stress caused by Mistretta was

       a huge factor in her decision to take a leave of absence because she feared

       further retaliation.  (Wright Affidavit).

29.    Admitted.

30.    Admitted.

31.    Admitted.

32.    Denied.  Mr. Mistretta advised Ms. Wright in a meeting with him that she

       could have the .5 LD Resource Room position because she was far more

       qualified for that position than the individual who would otherwise get the

       position.  Ms. Wright never stated that she did not want the Therapeutic

       Program position because "there were too many kids in it."  She advocated for

the LD position because she had significant experience teaching LD students

and she was therefore the best applicant for the job. The other person who

Mistretta wanted to give that position to did not have experience teaching LD

students. The teachers' contract with the school expressly states that

positions will be assigned based on the best interest of the students. Ms.

Wright was not qualified to teach in a Therapeutic Room. (See Wright

Statement, <u>Exhibit 1</u> and Wright Affidavit).

33.    Admitted.

34.    Admitted.

35.    Denied. The complaint did not involve her assignment. It involved the fact

that a room with no windows located in an undesirable section of the school

was given to students who were depressed and disabled. (Wright Statement,

<u>Exhibit 1</u>). This complaint was made because the special education students

deserved better rooms.

36.    Admitted.

37.    Admitted.

38.    Admitted.

39.    Admitted in part. Ms. Wright's October 19th Memorandum is two pages long.

The defendants selectively quote from it and in so doing have taken

statements out of context. The Memorandum speaks for itself.

40.    Admit. Mistretta wrote a memorandum to Ms. Wright. The memorandum

speaks for itself.

41.    The plaintiffs had no way of knowing what practices Mistretta actually followed prior to implementing changes at the School.

42.    Admitted.

43.    Ms. Wright is currently employed by the elementary school performing diagnostic testing. Because of undergoing a mastectomy and reconstructive surgery in late 2002, she is unable to carry heavy manuals and testing equipment required for this position. She has attempted in 2003 to get a position as an LD resource room teacher at the high school but her have been rejected by Mistretta and Reynolds. The openings have been filled by individuals which far less experience than Ms. Wright. (Wright Affidavit).

44.    Admitted.

45.    Admitted.

46.    Admitted.

47.    Admitted. She was sent this retaliatory memo after criticizing Mistretta's reorganization and in particular, the way it negatively impacted the special needs students. (Claussen Statement, Exhibit 2).

48.    Admitted. Ms. Claussen had the same workload the previous year and yet no one had questioned her workload as being less than full time. (Claussen Affidavit). Her workload was questioned only after she voiced her concerns regarding Mistretta's reorganization and how students were hurt by it. Id.

49.    Admitted. There was a meeting held. The statements in his Memorandum were made but are not accurate. (See Claussen Statement)

50.  Admitted. Ms. Claussen objected only because it was a punitive work

assignment that was already assigned to other teachers. If she was given a

legitimate assignment, she would not have so objected. (Claussen Statement,

Exhibit 2 and Claussen and Wright Affidavits).

51.  Admitted there was a meeting. The memo speaks for itself.

52.  Admitted.

53.  Denied. Mr. Mistretta did not mention the alleged compliance issue until after

this litigation commenced. He said he wanted to have a team environment

and create stronger bonds between the students and faculty.

54.  Denied.

55.  Denied. After Mistretta announced his plans for the reorganization, Ms.

Wright asked if the special education teachers could discuss the pros and cons.

His response was you can discuss it all you want but this is where we are

going. He flatly rejected proposals made by the teachers that would have

made the transition for their students easier and not destroyed the then existing

bonds between the teachers and students. (Wright Statement, Exhibit 1;

Claussen Statement, Exhibit 2; Wright and Claussen Affidavits).

56.  Denied. Most of the members of the special education department had

concerns regarding the reorganization and how it would affect their students.

This is the reason they met and made a proposal to implement the program so

as to not hurt the special education students. (Id.)

57.  Denied.

58.    The plaintiffs have no way of knowing what Reynolds thought of the plan when it was implemented.

59.    The plaintiffs have no knowledge as to what Reynolds actually thought.  The remaining portion of the paragraph regarding his deposition testimony is admitted.

60.    The plaintiffs have no knowledge as to Reynolds's background and do not concede he has expertise in Special Education.  The remaining portion of the paragraph regarding his deposition testimony is admitted.

61.    Admitted.

62.    Admitted.

63.    Denied.  (See Wright and Claussen Statements; See also Wright, Claussen and Epps Affidavits submitted with Opposition).

64.    Denied.  This is a statement of law which does not belong in a Rule 56(a)(2) statement.


## II.    Disputed Issues of Material Fact.

1.    Did defendant Mistretta  remove Maureen Epps as Curriculum Instructional Leader in retaliation for her making a complaint to the union regarding Mistretta's arbitrary and unwarranted decision denying her request for a personal day?

2.    Did Mistretta direct a different selection process for CIL to be instituted in the Foreign Languages Department, of which Ms. Epps was a part, in order to prevent her from becoming a CIL?

3.    Did defendant Mistretta ignore Maureen Epps' explanations when accusations were made against her because she had lodged a grievance complaint against him?

4.    Did Mistretta threaten the teachers of the special education department when they attempted to advocate for the students?

5.    Did Mistretta begin a campaign of harassment and retaliation against plaintiff Wright after she questioned him regarding the department budget and other matters regarding the students and what was in their best interest?

6.    Did Mistretta threaten to reorganize the special education department after the CIL of the department presented a plan to him that would change the assignment of an LD student?

7.    Did Mistretta reorganize the special education department to further his campaign of retaliation and harassment?

8.    Did Mistretta reject the special education teachers' proposals regarding assignments under the reorganization in order to retaliate and harass plaintiffs Claussen and Wright.

9.    Did Mistretta assign a punitive workload to Diane Claussen after she voiced her concerns regarding Mistretta's reorganization at a union meeting.

10.    Did Mistretta learn about Dianne Claussen's statements through the president of the union.

11.    What motivated Mistretta not to hire Geraldine Wright to fill an opening in the

special education department in the spring of 2003 for which she was qualified.


PLAINTIFFS
MAUREEN EPPS, ET AL


By: _____

Jacques J. Parenteau, ct 09771
Madsen, Prestley & Parenteau, LLC
111 Huntington Street, P.O. Box 1631
New London, CT  06320
Telephone: (860)442-2466
E-Mail: jparenteau@mppjustice.com


## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, this 26th day of November, 2003 to the following counsel and pro se parties of record:

James M. Sconzo, Esq.
Kevin Brady, Esq.
Halloran & Sage LLP
One Goodwin Square
Hartford, CT  06103

Frank Szilagyi, Esq.
Silvester & Daly
72 Russ Street
Hartford, CT  06106

Paul H. Gamache, Esq.
Siegel, O'Connor, Schiff & Zangari, P.C.
150 Trumbull Street
Hartford, CT 06103


_____
Jacques J. Parenteau